UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL RHYMES,

                                                                                                                    DECISION AND ORDER

                               Petitioner,

                                                                                                                        22-CV-6240DGL

        v.

WOLCOTT,

                                                  Respondent.
_____

Petitioner Michael Rhymes has filed a *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arising from his 1986 convictions following a jury trial in New York Supreme Court, Monroe County, for four counts of murder in the second degree and five counts of attempted robbery in the first degree. (Dkt. #1 at 1).

Because this is Rhymes' second habeas corpus petition, the Court initially referred the case to the Court of Appeals for the Second Circuit. (Dkt. #4). The Second Circuit remanded to this Court. In its mandate, the Second Circuit concluded that referral was unnecessary because Rhymes' first petition challenged his convictions, whereas the current petition "appears to be challenging one or more recent state court orders denying a request for enforcement of a portion of his commitment order stating where he should be incarcerated." (Dkt. #5 at 1).[1] That said, the

---

[1] That Rhymes likely disputes this characterization of his request to the state courts as one of enforcement (*see*, *e.g.*, Dkt. #17-2 at 38-47 (arguing for release)) is irrelevant to the successive petition analysis. Unlike his first petition, Rhymes does not take issue with the 1986 judgment; rather, he challenges the post-judgment actions of DOCS, which he raised unsuccessfully before the state courts.

Second Circuit indicated that this Court "should determine in the first instance whether . . . Petitioner's claim is properly asserted under § 2254, as opposed to 42 U.S.C. § 1983." (Dkt. #5).

Courts have long grappled with the "intersection of the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254" – both of which "provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials, but . . . differ in their scope and operation." *Heck v. Humphrey*, 512 U.S. 477, 480 (1994).

Here, Rhymes contends that his due process rights have been violated because he is incarcerated in a facility other than the one referenced in his sentence and commitment order. Other than arguing that he is entitled to release, he does not appear to challenge the validity of his convictions or the general fact of confinement. Therefore, Rhymes presents a conditions of confinement claim. *See also Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999) ("'Conditions of confinement' is not a term of act; it has plain meaning. It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment. . . . [A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement.").

Courts frequently receive § 1983 claims challenging conditions of confinement, but it is unsettled whether Section 1983 is the exclusive pathway to bring such claims. The Supreme Court has postured that "[w]hen a prisoner is put under additional and unconstitutional constraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal." *Preiser*, 411 U.S. at 499. "But the [Supreme] Court 'has never followed the speculation in *Preiser*' that a prisoner challenging those 'additional and unconstitutional restraints' would have 'a habeas claim independent of' a claim under section 1983." *Cox v. Annucci*, 2022 WL 3214772,

at *2 (W.D.N.Y. Aug. 9, 2022) (quoting *Muhammad v. Close*, 540 U.S. 749, 751 n.1 (2004)). Fortunately, this Court does not need to weigh into this issue because, for the reasons stated below, Rhymes' claim fails under either statute.

To state a cause of action under § 1983, a plaintiff must allege facts sufficient to show that (1) some person deprived him of a federal right, and (2) such person acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Likewise, § 2254(a) requires "a violation of the Constitution or laws or treaties of the United States."

Courts have held that "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty." *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir.) ("*Earley I*"), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006) ("*Earley II*"). "Thus, the only sentence known to the law is the sentence imposed by the judge; any additional penalty added to that sentence by another authority is invalid, regardless of its source, origin, or authority until the judge personally amends the sentence." *Earley II*, 462 F.3d at 149. Here, Rhymes claims that because the judge sentenced him to Wende, his placement in Clinton is unconstitutional.

However, Rhymes' claim is based on a faulty factual premise. He is clearly wrong as to what the sentencing court ordered at sentencing. As respondent notes, and the sentencing transcript confirms, "[a]t no point during the sentencing proceeding did the court indicate that petitioner should serve his sentence in a particular correctional facility. The sentencing judge never referenced Wende or any other institution. Rather, the court sentenced petitioner to be confined by the New York State Department of Corrections." (Dkt. #17-1 at 6; *see also* Dkt. #17-3). That ends the matter.

Only the sentence and commitment form prepared by an administrative clerk referred to Wende. A "warrant of commitment [prepared by the clerk] departing in matter of substance from

the judgment . . . is void …. The prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence." *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 465 (1936). Therefore, the specificity of Wende by the court clerk is void and Rhymes has no liberty interest in being detained there. *See also Meachum*, 427 U.S. at 224 ("The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause . . . . The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.").

Additionally, under New York law, "a prisoner has no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct." *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). Even if the sentencing judge had referred to Wende, New York Law explicitly states that "[a] commitment to a specified institution in the [Department of Corrections], rather than to the [general] custody of the department, which is valid in all other respects shall not be void for such reason but shall be deemed a commitment to the custody of the department." N.Y. Correction Law § 71(6). Any comment the court makes as to where a defendant should be placed "must be viewed as mere recommendations which do not affect [DOCS'] authority." *People v. Sass*, 182 A.D.2d 861, 861 (N.Y. App. Div. 1992), *appeal denied*, 80 N.Y.2d 837 (N.Y. 1992). Therefore, New York State law did not create a liberty interest in which prison Rhymes would serve his sentence. Rhymes has no liberty interest to be housed in a particular facility. There is no Constitutional violation whatsoever.

The state courts correctly interpreted New York State law and, of course, this federal court has no authority to act as a super-appellate court over state law interpreted by state judges.

Therefore, Rhymes' due process rights were not violated, and his claim, whether brought under § 2254 or § 1983 fails.[2]

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus (Dkt. #1) is DENIED. Because petitioner has not made a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated:  Rochester, New York
        October 23, 2023.

---

[2] If deemed a habeas petition, Rhymes' claim is also untimely. Rhymes states that the 1986 sentence and commitment order that designates Wende is "newly discovered evidence" he became aware of on November 25, 2019, when he received a response to a FOIL request. (Dkt. #1 at 15). However, the record fails to show that Rhymes exercised due diligence in seeking the sentence and commitment order. "Where documents could have been obtained earlier through the exercise of due diligence, a petitioner's procurement of them under a belated FOIL . . . request does not constitute 'new evidence' under § 2244(b)(1)(D)." *Plato v. Morrissey*, 638 F. Supp. 2d 338, 345 (W.D.N.Y. 2009) (quotations omitted); *Montgomery v. New York*, 2020 WL 4926274, at *3 (W.D.N.Y. Aug. 20, 2020) (fact of petitioner's resentencing *in absentia*, which was discovered by counsel more than two years later upon review of court transcript, was readily available and capable of discovery through due diligence); *Duamutef v. Mazzuca*, 2002 WL 413812, at *8 (S.D.N.Y. Mar. 15, 2002) ("That [petitioner] did not think to ask [for the claimed newly discovered evidence] is irrelevant as '[e]vidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered.'" (quoting *Hector v. Greiner*, 2000 WL 1240010, at *1 (E.D.N.Y. Aug. 29, 2000))).